IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Case No. 11-MJ-51 |
| v. | ) COMPLAINT FOR VIOLATION OF ) TITLE 18, UNITED STATES |
| RALPH LANG, | ) CODE, SECTION 248 |
| Defendant. | ) SEALED |

BEFORE United States Magistrate Judge  
Peter Oppeneer

United States District Court  
120 North Henry Street  
Madison, Wisconsin 53703

The undersigned complainant being duly sworn states:

On or about May 25, 2011, in the Western District of Wisconsin, the defendant,

RALPH LANG,

knowingly and intentionally attempted to injure, intimidate, and interfere with another person because that person was providing reproductive health services, in violation of Title 18, United States Code, Section 248.

This complaint is based on the attached affidavit of Joseph D. Lavelle, Special Agent, Federal Bureau of Investigation.

_____  
JOSEPH D. LAVELLE, Special Agent  
Federal Bureau of Investigation

Sworn to before me this 26th day of May 2011.

_____  
HONORABLE PETER OPPENEER  
United States Magistrate Judge

AFFIDAVIT

STATE OF WISCONSIN)
) ss.
COUNTY OF DANE    )

Joseph D. Lavelle, being first duly sworn on oath, deposes and states as follows:

1. I am a Special Agent with the Federal Bureau of Investigation and have been so employed for approximately one year. I am presently assigned to the Madison Resident Agency and my duties include investigating possible violations of 18 U.S.C. § 248 that provides:

> "whoever . . . attempts to injure, intimidate, or interfere with any person because that person is . . . providing reproductive health services (is guilty of a crime)."

The facts set out in the paragraphs below were provided to me in a report prepared by Detective Cory Nelson with the Madison Police Department, setting out information provided by Officer Angie Dyer and Sergeant Bernie Gonzalez. The information set out below is also based on statements made by Ralph Lang during a video-recorded interview which I have listened to in its entirety. Based on these facts, I believe probable cause exists to establish that RALPH LANG has violated 18 U.S.C. § 248.

2. Detective Nelson's report sets out the following information from Officer Angie Dyer:

   a. On May 25, 2011, Madison Police Department Officer Angie Dyer was dispatched to Motel 6 at 1754 Thierer Road in Madison at approximately 9:51 p.m. based on a report of a man who shot a handgun round through his door at the motel.

Upon arrival, Officer Dyer spoke with the Motel 6 desk clerk who said the person who rented Room 125 (later identified as Ralph Lang) had come to the front desk to report that he had accidently fired a round from his handgun through his door and that the round went into the door of the room across the hallway (Room 124). Lang told the clerk that he (Lang) was worried that the round may have struck someone in Room 124.

  b. Officer Dyer contacted Lang in Room 125 and Lang said he was loading a magazine into his handgun and it went off. He said that he did not know that a round was in the chamber and did not know how it had fired. Lang said the round went through his front door and entered the door of Room 124, which is directly across the hallway from Lang's room. Later investigation revealed that Room 124, while rented, was not occupied at the time and no one was injured.

  c. Officer Dyer asked Lang why he had a gun and Lang replied, "to lay out abortionists because they are killing babies." Lang then told Officer Dyer that he was planning on going to the Planned Parenthood abortion clinic on Highway 51 across from MATC on May 26, 2011, when it opened at 8:00 a.m. (I have confirmed that this clinic is located at 3706 Orin Road, Madison.) Lang said he was going to find out who the doctor was that was doing the abortions, and shoot him in the head.

  d. Lang told Officer Dyer that he was in Madison last week, on either Thursday or Friday, because he thought that surgical abortions were performed on those days. He told Officer Dyer that he had the gun with him last week, but was having spiritual struggles and was not 100% in sync with God, so he did not shoot anyone last

2

week. Lang told Officer Dyer that he bought the gun approximately two years ago after being arrested for protesting at an abortion clinic. He said he bought the gun "to help end abortion."

  e. Officer Dyer arrested Lang for reckless endangerment. She searched him incident to arrest and located a spent .380 caliber casing in his right front pants pocket. She did not recover the handgun.

 3. Detective Nelson's report also sets out the following statements from Madison Police Sergeant Bernie Gonzalez:

  a. Sergeant Gonzalez entered Room 125 to insure that nobody was injured in the room since the shot had been fired from there. Upon entering, in plain view, Sergeant Gonzalez saw a box containing numerous documents, including a map of the United States with dots in each State and the handwritten words above the northern border of the United States "some abortion centers." Also on this map were the words "Blessed Virgin Mary says Hell awaits any woman having an abortion. Nurse or doctor who helps will one" (sic). Sergeant Gonzalez reported seeing a significant amount of anti-abortion literature in Room 125.

  b. Sergeant Gonzalez also located a 2004 Chevrolet Cavalier green two-door automobile, with Wisconsin registration plate 465LMT. Pursuant to the Wisconsin Department of Transportation records, this vehicle is registered to Ralph Lang. This car was parked in the Motel 6 parking lot. Sergeant Gonzalez reported a large number of anti-abortion bumper stickers on the vehicle, as well as what appeared to be anti-

3

abortion literature and stickers inside the vehicle which were easily observed by simply looking through the windows.

4. I have also reviewed a Madison Police report prepared by Madison Police Officer Tim Frey on December 21, 2007. That report sets out that Ralph Lang was arrested at the Planned Parenthood building at 3706 Orin Road, Madison, Wisconsin, at approximately 12:15 p.m. on December 21, 2007. During that arrest, Lang told Officer Frey that the "bible states that anyone involved in abortion should be executed." Lang stated that everyone in the building should be executed and that police officers were not fulfilling their jobs by not executing the individuals involved in the abortion clinic.

5. I have been informed by FBI Special Agent Kevin Cassidy that Detective Cory Nelson interviewed a nurse today at Planned Parenthood on Orin Road in Madison, Wisconsin. The nurse stated that she is personally familiar with Ralph Lang and reported that Ralph Lang was present outside that facility last week.

6. Following his arrest, Ralph Lang was interviewed by Madison Police Detectives Bruce Frey and Cory Nelson. This interview was recorded and I have watched the video and listened to the audio. At the beginning of this interview, Lang was advised of his Constitutional Rights and told the officers that he was willing to speak with them. Lang stated that he drove from Marshfield and arrived in Madison at approximately 1:00 p.m. on May 25, 2011, and traveled alone in his car. He stated he checked into the Motel 6 at approximately 1:30 p.m. He then got his "stuff" out of his car, took a bath, and went through his "papers." He stated he then drove by the abortion

4

center to see if anyone was out there on the sidewalk. He stated he did this drive-by at approximately 5:30 p.m. on May 25. When asked if he had been there before, Lang stated that "obviously, I'd been there before."

7. During this interview, Lang stated that he was loading his gun when somehow a bullet went in the chamber and he accidently pulled the trigger. He said he had purchased the .38 a couple of years ago in the Medford area and had about 35 bullets with him.

8. When asked how long he had been involved, Lang stated "I wish I'd done heaven's will right away." When asked what his intent was for tomorrow (May 26), Lang stated he intended to find out who the abortionist was and to "do what I feel police officers fail to do." He stated, "what was I going to do? Take a gun, drop the abortionist." When asked if he meant he was going to shoot the abortionist and kill them, he stated "yah, stop them from killing other people and other babies." He agreed that he was going to do that by using the gun he had in his possession. When asked if he intended to go into the clinic and confront them, he stated he was going to confront them with his gun. When asked where he planned on shooting them, he said "right in the head."

9. Lang stated that if the officers went in his motel room and picked up his bible and other papers, it would explain his thinking. When asked if his plan was to just shoot the doctor, or if it also included the nurses, he stated he wished he "could line them all up in a row, get a machine gun, and mow them all down."

5

10. At the conclusion of the interview, as they were leaving the interview room, Lang asked Detective Frey "you guys ever go on the internet? Look up 'Rosary for the Unborn'".

Dated this 26th day of May 2011.

JOSEPH D. LAVELLE, Special Agent
Federal Bureau of Investigation

Sworn to before me this 26th day of May 2011.

HONORABLE PETER OPPENEER
United States Magistrate Judge

6